O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | February 2, 2009 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

    This matter is before the Court on the motion of John Mouren-Laurens, Mireille Mouren-Laurens and the Mouren-Laurens Oil Company ("Mouren-Lauren Defendants") for spoliation sanctions against Rev 973, LLC. They allege Rev 973 destroyed evidence on the site formerly occupied by the Mouren-Laurens Oil Company ("the Site"), in violation of their duty to preserve evidence relevant to the environmental claims it was asserting . They are joined in this motion by Emma Mouren-Laurens and Nicole Marie Mouren-Laurens, as well as by Claudine Mouren-Laurens on behalf of the Estate of Joseph Mouren-Laurens.

    The material facts are set forth in the Chronology, which the Court attaches as Exhibit A and incorporates by reference herein. For the reasons stated below, the Court DENIES the motion without prejudice.[1]

## A.    Legal Standard

    District courts may impose sanctions as part of their inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, *reh'g denied*, 501 U.S. 1269 (1991); *see also Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir.1992) (excluding evidence as a sanction for spoliation). If a party breaches its duty to preserve evidence during litigation, the opposing party may move the court to sanction

---

[1]Docket Nos. 459, 489.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | February 2, 2009 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

the party destroying evidence. *See Unigard*, 982 F.2d at 365. The obligation may attach even before a lawsuit is filed. *See, e.g.*, *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.")

A party's destruction of evidence need not be in "bad faith" to warrant a court's imposition of sanctions. *Glover*, 6 F.3d at 1329; *Unigard*, 982 F.2d at 368 n. 2 (sanctions may be imposed for "willfulness or fault by the offending party"). Nonetheless, a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed. *In re Napster, Inc.*, 462 F.Supp.2d at 1066 (citing *Baliotis v. McNeil*, 870 F.Supp. 1285, 1291 (M.D. Pa. 1994) and *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 79 (3rd Cir. 1994).

The moving party has the burden of demonstrating sanctionable conduct and prejudice. The weight of that burden depends on the circumstances. *See Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 167 F.R.D. 90, 108 (D. Colo. 1996) (reviewing cases and noting that courts have discretion to determine the burden of proof for inherent power sanctions). If sanctions are sought based on alleged fraud on the court, for example, courts have required that the fraud be proven by clear and convincing evidence. *See Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 394 (1st Cir. 1990); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1117-18 (1st Cir. 1989). The severity of the sanction may affect the standard of proof that is appropriate. *See Gates Rubber Co.*, 167 F.R.D. at 108-09 (requiring clear and convincing evidence for the most severe sanction while allowing lesser sanctions on lesser proof).

**B.    Findings Regarding Allegedly Despoiled Evidence**

<u>1. Business Records</u>

The moving parties have not demonstrated that Rev 973 destroyed the business records that John Mouren-Laurens left on the Site when he vacated it (he claims) in June 1998. By his own admission, he chose to leave the records there. Subsequently, he returned to the Site to find the records dirtied and partially destroyed by vagrants. The movants have not shown that Rev 973 violated any duties by failing to secure the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | February 2, 2009 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

premises from vagrants. Rev 973 denies it had actual possession of the site at any time in 1998, and there is no evidence otherwise. There also is no evidence that Rev 973 knew there was anything on the Site belonging to the Mouren-Lauren Defendants that needed to be secured. Moreover, the movants failed to identify any of the business records or to explain their relevance. Accordingly, the business records do not provide a basis for sanctions.

### 2. Altering Surface Soil

Mouren-Laurent Defendants also fail to show spoliation of evidence on the surface soil of the Site. Counsel Victor Otten speculates that there was soil grading or alteration, based on illegible photos that supposedly suggest the disappearance of surface stains. Otten cited no facts to support his "before and after" conclusion. Hence, his affidavit testimony is inadmissible as an opinion statement and for lack of foundation.

### 3. Removal of Oil Tanks & Oil Drums and Steam-Cleaning of Warehouse Floors and Containment Areas

This is the movants' strongest basis for spoliation sanctions, but their showing is not enough to warrant the sanctions they seek. They claim Rev 973 destroyed the single best evidence for determining whether the movants handled hazardous waste on the Site by not preserving the contents of the oil tanks and oil drums and by steam-cleaning the warehouse floors and containment areas.

Rev 973 commissioned Express Oil, an environmental contamination removal company, to conduct a clean-up of the site in early 1999. It did so in response to pressure from government regulators, including Los Angeles County's Notice of Violation and Order to Comply, dated August 5, 1998, the regulators' Site visit in September 1998, and the regulators' follow-up complaints during the rainy season of Winter 1998-1999. Among other things, the County's Notice dated August 5, 1998 ordered the following: Determine contents of tank farms and remove waste determined to be hazardous; remove accumulated waste in specified areas; steam clean the tanks and floors in the processing areas; remove waste from loading dock area and steam clean the floors. The Notice stated that if the facility was not cleaned up in a reasonable time, the County would refer it to the federal EPA. Although that Notice was issued to John Mouren-Laurens, the

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | February 2, 2009 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

government regulators made it clear to Rev 973 that as the current owner they expected it to clean up the site.

Rev 973 insists that it acted in good faith in cleaning up the Site. Both sides point to the fact that Rev 973 sued its then-attorney, Morris Getzels, for allegedly failing to advise it of the need to preserve evidence. Although counsel's negligence (if any) would not absolve Rev 973 of the consequences of spoliation, on the whole the record before the Court indicates Rev 973 did not have culpable intent.

If anything, there was a failure to preserve evidence by *both* sides. After this lawsuit was filed in March 1998, both sides had a duty to preserve evidence. Yet, even though they were not physically evicted until 1999, the Mouren-Laurens Defendants themselves apparently failed to take action to preserve what they now claim is exculpatory evidence. Given the Mouren-Laurens Defendants' failure to clean up the Site when they vacated, and the pressure regulators were putting on Rev 973, it seems Rev 973 is not more at fault than the movants in this regard.

In addition, the movants have not demonstrated prejudice. For one thing, the parties might still be able to obtain the evidence removed during the Express Oil clean-up. Express Oil had the waste tested by Demenno/Kerdoon ("D/K"). Rev 973 claims D/K firm might still have the test results. The Mouren-Lauren Defendants never served D/K, although its counsel (Otten) claims he left a voicemail for Mr. Kerdoon asking about test results. Since both sides should have preserved the evidence but didn't, both sides have the incentive, and likely the duty, to retrieve whatever evidence D/K might have. Moreover, there is evidence still on the Site that Express Oil did not remove - - the underground pipelines connected to the tanks - - that all the parties may now access.

Another relevant consideration is that the lack of direct physical evidence of the waste in those tanks and drums appears to prejudice everyone equally. Without the "single best evidence," as movants call it, it would be more difficult for Rev 973 to prove its theory that the waste was hazardous, just as it would make it more difficult for Mouren-Lauren Defendants to prove that it was not. As discovery on the Site proceeds, it will become clearer whether any party is particularly prejudiced.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | February 2, 2009 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

## C.     Analysis of the Requested Sanctions

The case movants rely on, *In re Napster*, discussed the range of sanctions for spoliation: Default, preclusion of evidence, adverse inference, and monetary sanctions. *Napster* noted that in general, bad faith is not required for sanctions. However, it is required for the most severe sanction, default, and is an important consideration for sanctions. 462 F.Supp.2d at 1066-67.

Mouren-Lauren Defendants request the following sanctions:

   1. An adverse inference that Mouren-Lauren Defendants did not handle or store waste and did not contribute to the contamination caused by volatile organic compounds, as well as preclusion of expert testimony to the contrary.

   2. A finding that at the time Mouren-Lauren Defendants vacated the Mouren-Laurens Site, only new motor oil and antifreeze were stored in the aboveground storage tanks and drums.

   3. Preclusion of photos of soil staining.

These requested sanctions are too broad. They are not tailored to the alleged misconduct of Rev 973, and they would prejudice the Leach Defendants.

Even if Rev 973 were the only opposing party, the showing on this motion doe not support sanctioning it with an adverse inference instruction. According to *Napster*, "a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." 462 F.Supp.2d at 1078. Under these standards, an adverse inference instruction is not warranted, because Rev 973 did not have a culpable state of mind. *Compare id.* (granting adverse inference instruction because investor Hummer Winblad deleted Napster-related emails knowing that it had a duty to preserve them). The logic behind the adverse inference sanction is that the party that destroyed the evidence likely destroyed evidence

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | February 2, 2009 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

favorable to the opposing party; that logic does not apply where there is no evidence of a culpable state of mind.

Furthermore, the first and second requests go farther than an adverse inference concerning the chemical makeup of the wastes that were disposed. As phrased, those requests seek something close to a directed verdict.

Nor is the preclusion sanction warranted. The *Napster* court noted that this sanction depends on the extent to which the moving party was prejudiced by the destruction of evidence. 462 F.Supp.2d at 1077-78. The court held that the movants had shown sufficient prejudice to warrant some degree of preclusion sanctions, but reserved the determination of the nature and extent of the sanctions for summary judgment or trial, when the full extent of prejudice becomes clear. *Id.* at 1078. Here, Mouren-Laurens Defendants have not shown sufficient prejudice for the Court to decide whether any sanctions are warranted, much less their nature and extent.

## D.  CONCLUSION

There is no basis for any sanctions concerning soil staining or business records. Sanctions of some kind against Rev 973 concerning the contents of the oil drums, oil tanks, warehouse floors and containment areas are not available now, although narrowly tailored sanctions may prove warranted in the future. According, the Court DENIES this motion without prejudice.

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15. THIS ORDER IS NOT INTENDED FOR PUBLICATION.

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | SMO |

Exhibit A

*Rev 973 LLC v. John Mouren-Laurens et al.*
CV 98-10690
Mouren-Lauren Defendants' Motion for Spoliation Sanctions

# CHRONOLOGY

| Date | Event | Source |
|---|---|---|
| 1997 | Rev 973 invested in non-performing loans, including a promissory note that John and Mireille Mouren-Laurens secured by deed of trust on the Mouren-Laurens Site. | Fine Decl. ¶ 4 |
| 2/6/1998 | Rev 973 completed foreclosure on the Mouren-Laurens site, through trustee sale. Trustee's Deed Upon Sale was recorded on 2/10/1998. | Fine Decl. ¶ 8; Rev. 973's Appendix, Ex. 30. |
| 3/11/1998 | Rev 973 filed action in Los Angeles Superior Court against Mouren-Laurens to recover damages for contamination (TC011090). This case was removed to federal court in December 1998 (CV 98-10690).<br><br>Rev 973 filed a second action to evict MLOC from the site. (TC011091) | Fine Decl. ¶ 10. |
| UNKNOWN | Jerrold Fine (head of Rev 973) states that sometime in 1998 the Superior Court granted judgment of unlawful detainer, but MLOC did not "surrender possession." Rev 973 does not provide any details about the court proceedings. It does not state when it obtained the judgment and whether immediately afterwards it tried to enforce the judgment through eviction. The Superior Court online database is confusing: It notes "Judgment by the Court 5/12/2000." | Fine Decl. ¶ 11. |
| 8/5/1998 | LA County issued a Notice of Violation and Order to Comply to John Mouren-Laurens and MLOC. There had been various other such regulatory notices in the 1980s and 1990s. This notice, dated August 5, 1998, appears to be the first that was issued after Rev 973 became owner of the Site. The Notice ordered the clean up of the Site, which Rev 973 eventually completed in April-May 1999. | Rev. 973's Appendix, Ex. 13. |

1

| Sept. 1998 | Paul Biren of LA County Fire Dep't called Fine and asked him to go to the Site, because various regulators would be at the Site. Various public agencies, including LAFD, County officials, and U.S. EPA pressured Fine to clean up the Site, calling it a public health hazard. | Fine Decl. ¶¶ 14-15. |
|---|---|---|
| | On the same day, Carmen Trutanich (ML Defendants' counsel then and now) arrived at the Site to speak for John Mouren-Laurens. Trutanich orally told Fine that if Rev 973 would sue the Mouren-Laurens for violation of environmental laws, Trutanich could get insurance coverage to clean up the Site. Trutanich offered to send Rev 973's attorney a form complaint. Fine (mis)understood Trutanich to mean that the Mouren-Laurens were going to clean up the Site as part of vacating the Site. Exhibit 14 to Fine's declaration is a letter from Trutanich's firm to MLOC's insurance company confirming that the insurer would accept the defense under a reservation of rights. Trutanich did not respond to this in the reply papers. | Fine Decl. ¶¶ 18-19; Rev. 973's Appendix, Ex. 14. |
| June 1998? | John M-L says he thinks, but isn't sure, he was served with the unlawful detainer and evicted around this time. He says he left many items at the Site, including MLOC operating records and office equipment, because he did not have the money to store them. He returned weeks later to find the place a mess, with homeless people living there and the business records in bad condition. | Mouren-Laurens Decl. ¶¶ 7, 9. |
| | Fine claims the Mouren-Laurens continued to control the Site "throughout 1998" and that if they were surrendering possession, they never informed Rev 973. | Fine Decl. ¶ 12. |
| "Rainy season" 1998-1999 | Rev 973 received more complaints from regulators about releases of surface contamination. | Fine Decl. ¶ 20. |
| 12/31/1998 | Notice of Removal filed by Mouren-Lauren Defendants. | |

2

| February or March 1999 | Rev 973 physically took possession of the Site by locking out all occupants, including the Mouren-Laurens. By the time of the lock-out, there was little left on the Site; the Mouren-Laurens had removed everything of value. There were no business records left, the warehouses and offices were empty.<br><br>Given public hazards, Rev 973 sought bids from environmental contamination removal services to clean up the surface of the Site, eventually hiring Express Oil. | Fine Decl. ¶¶ 20-24. |
|---|---|---|
| April-May 1999 | Express Oil cleaned the Site. "During this time, Rev 973 relied on Morris Getzels, as Rev 973's counsel, for compliance with legal requirements and on Express Oil, as the environmental contamination removal expert, for regulatory requirements." | Fine Decl. ¶ 25. |
| 3/21/2001 | According to Superior Court website, Getzels sued Fine over legal fees (Getzels et al v. Fine et al, SC065778). Fine counterclaimed for legal malpractice. Fine alleged that Getzels should have advised Rev 973 not to destroy evidence during the clean-up of the Site. | Otten Reply Decl., Ex. H (trial testimony of Fraley, Rev 973's counsel) |
| 9/15/2003 | Fine lost the case against Getzels. Jury trial ended with judgment in favor of Getzels on the fees ($36,000) and against Fine on the malpractice counterclaim. | Rev 973's Appendix, Ex. 41 (Judgment on Jury Verdict in *Getzels*) |

3