O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 98-10690 AHM (Ex) | Date | January 25, 2010 |
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

| | |
|---|---|
| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE |

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: |
|---|---|

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

## I.    INTRODUCTION

As the parties are aware, this case has a long and storied history involving a dispute over contaminated parcels of land in Compton, California.  Among other claims in the case, Plaintiff REV 973 LLC ("REV 973") and Defendants and Cross-Claimants John Mouren-Laurens, Mireille Mouren-Laurens, and the Mouren-Laurens Oil Company (collectively the "MLOC Defendants") have brought claims for injunctive relief under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, *et seq.*, against Defendants Roy Leach, Patricia Leach, Leach Oil Company, and Leach Property Management (collectively the "Leach Defendants").  Now, REV 973 and the MLOC Defendants each bring a separate motion for a preliminary injunction under RCRA to force the Leach Defendants to remediate alleged environmental contamination in an enclosed pond on the Leach Defendants' property.[1]  The Leach Defendants used a lined

---

[1]The MLOC Defendants assert that they are also bringing a motion for a preliminary injunction for clean-up under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.*  However, CERCLA does not provide for a private right to injunctive relief for cleanup of a contaminated site.  *Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 840 F.2d 691, 697 (9th Cir. 1988) (holding that Section 107(a) of CERCLA, which authorizes private cost recovery suits, does not provide for injunctive relief, in contrast to Section 106(a), which allows injunctive relief in CERCLA suits brought by governmental entities); *see* 42 U.S.C. § 9606(a) ("Section 106(a)") and 42 U.S.C. § 9607(a) ("Section 107(a)").

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | | Date | January 25, 2010 |
|---|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | | |

pit built into the ground for waste oil recycling.  REV 973 refers to this container as an "underground storage tank" ("UST"), while the Leach Defendants and the MLOC Defendants refer to it as a "Skim Pond."  For the purposes of clarity and to avoid any unintended inferences from the use of one party's term, the Court will refer to this pit generically as "The Container."

In terms of relief, REV 973 seeks an order requiring the Leach Defendants to: (1) lawfully dispose of the sludge and wastewater in The Container; (2) lawfully remove The Container; and (3) lawfully remove the soil beneath The Container that is contaminated with hazardous and carcinogenic substances to the specifications of the appropriate regulatory agency.  Motion at 25.  (REV 973 filed no proposed order.)  For their part, the MLOC Defendants request an order enjoining Leach Oil Company from continuing to allow The Container to further contaminate the surrounding soil.  Proposed Order at 2. They further request that Leach Oil Company be required to achieve this goal in any effective manner, provided that the water is drained, the sludge is removed, both the water and the sludge are disposed of in compliance with all applicable laws, and The Container is effectively sealed, filled, or removed.  *Id.*  The Court heard oral argument on these motions on January 25, 2010.  For the following reasons, I GRANT these motions,[2] but modify the relief requested.  Both REV 973 and the MLOC Defendants qualify under 42 U.S.C. § 6972(a)(1)(B) for a preliminary injunction that requires the Leach Defendants to remove the water and sludge from The Container; dispose of these wastes in compliance with all applicable laws, statutes, and regulations; and effectively seal, fill, or remove The Container.

## II.    SUMMARY OF FACTS

Leach Oil Company occupies a site adjoining the site of the former Mouren-Laurens Oil Company, now owned by REV 973.  Both sites are contaminated with oil and other contaminants.

The Container in question is at the edge of the Leach Defendants' property closest to the REV 973 property and measures approximately 11.5 feet by 24 feet in size.  Wells Declaration ¶ 5.  It is approximately 8.5 feet deep, with 3 feet of sludge at the bottom.  *Id.*

---

[2]Docket Nos. 629 and 630.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | January 25, 2010 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

It contains standing water and is filled with liquid to near the top of the pond. *Id.* The steel cover has a large (approximately 30-inch diameter) hole that is covered with steel sheeting and plywood, but is not sealed. *Id.* and Derhake Decl. ¶ 50.

The sampled sludge and water were tested at a state-certified laboratory and were found to contain pollutants, including chlorinated volatile organic compounds ("VOCs") and petroleum hydrocarbons, at levels that—if the sludge or water escaped from The Container—could cause soil contamination in excess of California cleanup standards. Wells Decl. ¶¶ 6, 9, 11. Two drinking water wells are located within one half-mile and down-gradient of The Container, meaning groundwater flows toward these wells. Derhake Decl. ¶ 52.

Volatile organic compounds and petroleum hydrocarbons have been found in the soil in the area surrounding The Container. Wells Decl. ¶ 7. According to the MLOC Defendants' expert, the nature and distribution of soil contamination strongly suggests that contaminated water leaking from The Container is a major historical source of contamination that now burdens these sites. *Id.* at ¶ 10. And, indeed, in 1983 or 1984, a Leach Oil Company employee observed that The Container's concrete walls had several cracks in them, one of which was about two feet long and wide enough to stick a pencil into. Derhake Decl. ¶ 32. At that time, employees patched the cracks with concrete or stucco. *Id.* This was the last time that the pond has been inspected, and the current conditions of the walls are unknown. *Id.* at ¶¶ 33, 49.

There are two potential ways that contaminants could escape The Container: through leaking out the bottom or through overflowing out of the top during a heavy rainstorm. *See* Derhake Decl. ¶¶ 49-50. There is no leak-monitoring equipment in The Container, so it is impossible to determine with certainty whether the pond actually is leaking, without draining and examining the pond. *Id.* at ¶ 49.

The Moving Parties present evidence from a June 12, 2009 study of the site by Waterstone Environmental, Inc. ("Waterstone"), an independent environmental consulting firm. In that study, Waterstone found that between April 15, 2009 and May 18, 2009, the water level dropped 0.25 feet in The Container. Wells Decl., Ex. B at 21. According to the MLOC Defendant's expert, this evidence shows that The Container is leaking. Wells Decl. ¶ 8. Dr. Wells further opines that when the water leaks out the

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 98-10690 AHM (Ex) | | Date | January 25, 2010 |
|---|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | | |

bottom of The Container, it will dissolve contaminants in the sludge as it passes through, creating contaminant levels in the surrounding soil and groundwater that present a risk to environmental health. Wells Decl. ¶¶ 9, 11. According to the Leach Defendants' expert, the finding of leaking in the Waterstone study is questionable because the study did not account for the loss of water attributable to evaporation.[3] Liu Decl. ¶ 14. In response, the MLOC Defendants' expert asserts that evaporation alone could not account for the loss of this much water, especially given the fact that The Container was covered, and a saturation level of vapor would quickly be reached. Wells Reply Decl. ¶ 7.

## III.   LEGAL STANDARD FOR A MOTION FOR A PRELIMINARY INJUNCTION

As the Supreme Court has articulated,

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Resources Defense Council, Inc.*, — U.S. —, 129 S. Ct. 365, 374 (2008); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374).

## IV.   ANALYSIS

### A.   Likelihood of Success on the Merits

The Court must examine the likelihood of success of the RCRA claims on the merits. REV 973 asserts it is entitled to a preliminary injunction under two sections of RCRA—Section 6972(a)(1)(A) and Section 6972(a)(1)(B). *See* 42 U.S.C. §§ 6972(a)(1)(A) & (B). The MLOC Defendants bring their motion under only Section

---

[3]Dr. Liu also asserts that the study was not scientifically rigorous because it did not include any "quality control," but he never explains what he means by this phrase. Liu Decl. ¶ 14.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 98-10690 AHM (Ex) | Date | January 25, 2010 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

6972(a)(1)(B).

### 1.  REV 973 does not qualify for an injunction under Section 6972(a)(1)(A)

Section 6972(a)(1)(A) provides that an individual may commence a citizen suit against any person "alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order" pertaining to solid waste disposal under RCRA.  42 U.S.C. § 6972(a)(1)(A).  The statute states that "[t]he district court shall have jurisdiction . . . *to enforce* the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A) . . . ."  42 U.S.C. § 6972(a) (emphasis added).  REV 973 asserts that the Leach Defendants are violating certain portions of RCRA and California statutes and regulations enacted pursuant to RCRA that would apply if The Container were classified as an "Underground Storage Tank."[4]  *See* 42 U.S.C. §§ 6991-6991i; Cal. Health & Safety Code §§ 25280.6 & 25284; Cal. Code. Regs. tit. 23, §§ 2640 – 2648.  Specifically, REV 973 asserts that the Leach Defendants have failed to obtain a permit for The Container, have failed to install a liner[5] or leak detection equipment, and have failed to institute a monitoring program as required by these statutes and regulations.  REV 973's Motion at 14-15.  However, the relief REV 973 requests for its preliminary injunction is an order requiring the Leach Defendants to lawfully dispose of the sludge and wastewater in The Container, remove the structure of The Container, and remove the soil underneath The Container.  REV 973's Motion at 25.  REV 973 cites to no authority explaining why a failure to obtain a permit or conduct the required monitoring would warrant an injunction under Section 6972(a)(1)(A) requiring the Leach Defendants to remove The Container and clean its contents and surroundings, and the Court has been unable to find any authority supporting this position.

Indeed, even the statute itself suggests that such relief would be unavailable under

---

[4]As discussed above, the Court has not made a determination whether The Container qualifies as an Underground Storage Tank, a matter of dispute between the parties.  The Court need not do so because REV 973's claims for relief under this Section fail regardless of The Container's status.

[5]The Court could not find the liner requirement in the statutes and regulations which REV 973 cited.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | January 25, 2010 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

Section 6972(a)(1)(A).  The statute specifies that a court shall have jurisdiction under Section 6972(a)(1)(A)  "to enforce" the regulation or requirement allegedly violated, not necessarily to remedy any effects from its violation.  Enforcing the regulations and requirements allegedly violated here would involve requiring the Leach Defendants to obtain a permit and institute a monitoring program, not to clean The Container.

Thus, REV 973 has failed to establish that it is likely to be able to receive the relief it requests under 42 U.S.C. § 6972(a)(1)(A).

### 2.  Both REV 973 and the MLOC Defendants qualify for an injunction under Section 6972(a)(1)(B)

Based on 42 U.S.C. § 6972(a)(1)(B) of RCRA, a plaintiff may bring a citizen suit against:

> any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste *which may present an imminent and substantial endangerment to health or the environment.*

*Id.* (emphasis added).  The statute further provides:

> The district court shall have jurisdiction . . . to restrain any person who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both . . . .

42 U.S.C. § 6972(a).  This section may be used to seek a mandatory injunction to "order[] a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484 (1996).

The Leach Defendants do not challenge the fact that they qualify as a past or present owner or operator of The Container, that The Container qualifies as a treatment, storage, or disposal facility under the statute, or that they contributed to the past or present handling, storage, treatment, transportation, or disposal of a solid or hazardous waste under the act.  Therefore, the only issue in dispute is whether the contamination presents an "imminent and substantial endangerment to health or the environment." *Id.*

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | January 25, 2010 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

"[A] finding that an activity may present an imminent and substantial harm does not require actual harm." *Price v. United States Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994). "However, at the very least, endangerment or a threat must be shown," and that "endangerment must be substantial or serious, and there must be some necessity for the [remediation] action." *Id.* Moreover, in order for an endangerment to qualify as imminent, it must be "present *now*, although the impact of the threat may not be felt until later." *Meghrig*, 516 U.S. at 486 (quoting *Price*, 39 F.3d at 1019). Section 6972(a) was "designed to provide a remedy that ameliorates present or obviates the risk of future 'imminent' harms, not a remedy that compensates for past cleanup efforts." *Id.* at 486.

The Moving Parties have offered sufficient evidence to show a likelihood of their being able to prove that The Container may present an imminent and substantial harm to the surrounding soil and groundwater. The Moving Parties have established that it is likely that contaminated water is leaking out of The Container, since the Waterstone study found that the water level in The Container dropped 0.25 feet in just over a month. Wells Decl., Ex. B at 21. Dr. Liu's criticism that this study does not account for evaporation is rebutted by Dr. Wells's assertion that evaporation alone could not account for the loss of this much water, especially given the fact that The Container was covered. *See* Liu Decl. ¶ 14; Wells Reply Decl. ¶ 7.

Dr. Wells's Declaration established that several chlorinated VOCs and petroleum hydrocarbons are present at elevated levels in the sludge and water in The Container. Wells Decl. ¶¶ 6-7. He further explained that when The Container leaks, the water percolates down through the sludge, acquiring additional chemicals as it moves. *Id.* ¶ 9. Because the water acquires additional chemicals as it passes through the sludge, the water leaking out of The Container will have higher concentrations of contaminants than the water sitting in The Container. *Id.* Thus, Dr. Liu's assertion that the contaminant levels in the water in The Container are not dangerous, Liu Decl. ¶ 12, does not hold water (pun intended) because after it leaks out the water will be more contaminated. According to Dr. Wells, these discharges containing elevated levels of chlorinated VOCs and petroleum hydrocarbons pose a serious risk of harm to public health and the environment through contamination of soil and groundwater. *Id.* ¶ 11. Nowhere do the Leach Defendants challenge this characterization of the likely harm to groundwater and soil if The Container is, in fact, leaking. Dr. Liu asserts only that The Container may not be leaking because the Waterstone study was not scientifically rigorous (a claim that Dr.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | January 25, 2010 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

Wells has refuted, as discussed above) and that the potential harm from overflow (as opposed to percolation) may not be as severe as Dr. Wells suggests.  Liu Decl. ¶¶ 14-15.  However, the Leach Defendants provide no refutation whatsoever of Dr. Wells's conclusions that the leaking that had been observed presents a serious risk of harm to environmental health.[6]

Moreover, REV 973's expert, Mr. Derhake, also explains that two drinking water production wells are located within one-half mile south of the Leach property and that groundwater in the vicinity flows in a south to southeast direction.  Derhake Decl. ¶ 52.  Thus, groundwater under the Leach property will eventually flow under the ground in the vicinity of these drinking water wells.  *Id*.  The parties do disagree about the potential of the groundwater under the Leach property to reach additional wells, and the Leach Defendants assert that Mr. Derhake has failed to provide evidence specifically showing that the contamination in and around The Container threatens the two wells.  Opp'n at 4-5.  However, the Leach Defendants do not rebut REV 973's evidence that the groundwater under the Leach property will eventually reach these two wells, and Dr. Wells has already established that the contaminants in The Container present a serious risk of contamination to the groundwater.

The moving parties have offered evidence, which the Leach Defendants have not refuted, that shows that they are likely to be able to prove that The Container in its current state presents a serious endangerment to the surrounding soil and groundwater and the public health.  Thus, they are likely to be able to prove that The Container may present an imminent and substantial harm, and they are, therefore, likely to prevail on the merits of their RCRA claims.

**B.     Likelihood of Irreparable Harm in the Absence of Preliminary Relief**

---

[6]The Leach Defendants argue that because the Los Angeles Regional Water Quality Control Board ("LARWQCB") is overseeing the investigation of the site and has not required any interim removal action with respect to The Container, this is evidence that no threat of imminent harm requiring a preliminary injunction exists.  Opp'n at 5.  However, this argument fails because the RCRA statute explicitly provides that a plaintiff may only pursue a citizen suit under 42 U.S.C. § 6972(b)(1)(B) if an administrative agency is *not* taking action against the alleged offender.

O

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | January 25, 2010 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

The same facts the Movants offer to establish the likelihood of being able to prove an imminent and substantial harm under RCRA also establish the likelihood of irreparable harm in the absence of preliminary relief required to grant a preliminary injunction under *Winter. See* 129 S. Ct. at 375 (requiring "plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction). "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *National Parks & Conservation Association v. Babbitt*, 241 F.3d 722, 737 (9th Cir. 2001) (quoting *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 545 (1987)) (holding that the district court erred when it failed to issue a preliminary injunction to compel the National Park Service to prepare an Environmental Impact Statement before allowing additional cruise ships to enter a national park).  Here, the Movants have presented evidence that establishes that it is likely that contaminated water is leaking out of The Container and contaminating the surrounding soil and groundwater, which in turn is threatening public and environmental health.  This is sufficient to establish the likelihood of irreparable harm in the absence of preliminary relief.

### C.    Balancing of Equities

The Court must also examine the balance of equities involved in granting the proposed preliminary injunction. *Winter*, 129 S. Ct. at 374.  This "involves an evaluation of the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied."  11A C. Wright et al., FEDERAL PRACTICE AND PROCEDURE ("WRIGHT & MILLER") § 2948.2, p. 166-67 (2d ed. 1995).  "[I]f an injunction bond can compensate defendant for any harm the injunction is likely to inflict, the balance should be struck in favor of plaintiff." *Id.* at p. 178.  Here, the hardship to the Leach Defendants from granting the injunction would be the cost of removing the liquid and the sludge contents of The Container and ensuring The Container will not leak further.  In comparison, if the injunction is denied, someone (possibly the Movants) will likely have to remediate additional contamination that has leaked into the soil and groundwater under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 6901, *et seq.*—the basis of many of the other causes of action in this lawsuit.  According to the MLOC Defendants' moving papers, the cost of remediating these spills will be much higher than the cost of cleaning up The Container—an assertion that has not been challenged by the Leach

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | January 25, 2010 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

Defendants.  MLOC Defendants' Motion at 7.  In addition, if the Court requires a bond to compensate the Leach Defendants for the cost of remediation if it is shown that The Container is not currently contributing to contamination, the balance of equities will clearly tip in the Movants' favor.

### D.    The Public Interest

The fourth factor that the Court must balance under *Winter* is whether "an injunction is in the public interest."   129 S. Ct. at 374.  Here, the public interest clearly weighs in favor of granting an injunction.  Contaminated water is leaking out of The Container, polluting the surrounding soil and groundwater, and potentially threatening to contaminate two drinking water wells less than a half-mile away.  Even if other sources of contamination exist, removing one source of contamination will reduce the threat of harm to environmental and public health.

### E.    Scope of the Injunction

During oral argument, to support its position that the injunction should require removal of the soil surrounding The Container, REV 973 directed the Court's attention to statements in Mr. Derhake's declaration discussing soil and groundwater contamination in the region surrounding The Container.  Derhake Decl. ¶¶ 59-64.  However, this evidence fails to rebut Dr. Liu's evidence that much of the contamination in the surrounding soil likely resulted from historical releases originating on the MLOC Defendants' site.  Liu Decl. ¶¶ 20-23.  In addition, according to Dr. Liu, it is possible that soil excavation is not the remedial alternative that is most protective of human health and the environment.  Liu Decl. ¶ 19.  On the record before it, the Court will not issue a preliminary injunction ordering remediation of the soil beneath The Container.

In contrast, the relief that the MLOC Defendants request is supported by evidence in the record.  The MLOC Defendants request that the Court order the Leach Defendants to drain The Container's water, remove the sludge, properly dispose of these wastes, and effectively seal, fill, or remove The Container.  Proposed Order at 2.  The Leach Defendants' expert, Dr. Liu, actually agrees that if it is deemed necessary to address The Container in an interim removal action, it would be appropriate to pump out the water, remove the sludge, and backfill the Skim Pond.  Liu Decl. ¶ 24.  In response, the MLOC

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 98-10690 AHM (Ex) | Date | January 25, 2010 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

Defendants ask the Court to require the Leach Defendants to conduct a thorough inspection of The Container before proceeding to backfill it.  MLOC Defendants' Reply at 6; Wells Reply Decl. ¶ 10.

### F.    Bond Requirement

None of the parties mentioned a bond requirement in their moving papers, but Fed. R. Civ. P. 65(c) provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

All parties agreed at the hearing that a bond equal to the estimated cost of the remediation work would be fair.  The parties have agreed to ask Waterstone to estimate the cost of the remediation, and the Court ORDERS the parties to file a stipulation by January 29, 2010 specifying their agreement that Waterstone's estimate of the remediation costs will be the amount of the bond.

## V.    CONCLUSION

The Court ORDERS Counsel for the MLOC Defendants to file a Proposed Order of Injunction by February 5, 2010 with the following provisions:
(1)    The Leach Defendants are enjoined from further contaminating the soil surrounding The Container.
(2)    The Container's water must be drained.
(3)    The layer of sludge on the bottom of The Container must be removed.
(4)    Both the water and the sludge must be disposed of in compliance with all applicable laws, statutes, and regulations.
(5)    The Container must be effectively sealed, filled, or removed.  If filled, it must first be thoroughly inspected to check for the potential for future leakage.
(6)    The last date to achieve compliance shall be August 9, 2010.
(7)    The MLOC Defendants and REV 973 shall jointly post a bond equal to Waterstone's estimate of the remediation costs, refundable to the Leach Defendants in the event it is determined upon inspection that The Container

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 98-10690 AHM (Ex) | Date | January 25, 2010 |
|---|---|---|---|
| Title | REV 973 LLC v. JOHN MOUREN-LAURENS, *et al.* | | |

could not currently be leaking.

|  | : |  |
|---|---|---|
| Initials of Preparer | | SMO |