Law Offices of Beth S. Dorris
Beth S. Dorris, State Bar No. 115798
beth.dorris@aol.com
Gerald Greengard, State Bar No. 125741
ggreengard@greengardlaw.com
3226 Mandeville Canyon Rd.
Los Angeles, CA 90049
Tel: (310) 476-4761
Fax: (877) 433-4154

Attorneys for Plaintiff and Counter-Defendant REV 973, LLC, and Third Party Defendants REVERE FINANCIAL CORPORATION and JERROLD A. FINE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| REV 973, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>JOHN MOUREN-LAURENS, an individual; et al.,<br><br>Defendants.<br><br>And related counter- and cross-actions | Case No. CV 98-10690 DSF (Ex)<br><br>**REV 973'S OPPOSITION TO MOUREN-LAURENS PARTIES' MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF RANDALL BLAESI**<br><br>Assigned for all purposes to:<br>Hon. Dale S. Fischer<br><br>Date: TBD<br>Time: TBD<br>Crtrm.: 7D<br><br>Trial Date: Currently Vacated |

///

///

///

## I. INTRODUCTION

Plaintiff and Counter-Defendant Rev 973, LLC ("Rev 973" or "Rev") hereby respectfully opposes the Mouren-Laurens Parties'[1] Motion *in Limine* to Exclude the Expert Report and Testimony of Randall Blaesi (Docket no. 2945). That report and the proffered testimony of Mr. Blaesi should be admitted and the Motion should be denied in its entirety because Mr. Blaesi's opinions are both relevant and reliable under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ("*Daubert*"). The questions addressed by Mr. Blaesi in his expert report and in his proffered testimony are central to this case and will assist the trier of fact to understand the evidence and to determine facts at issue. Moreover, the report and proffered testimony are grounded in clear and reliable facts, and Mr. Blaesi has adhered to reliable and well-recognized standards and methodologies. Additionally, Mr. Blaesi is well qualified to render his opinions in the report and proffered testimony. Furthermore, the Mouren-Laurens Parties' arguments largely address the *weight* of Mr. Blaesi's expert report and proffered testimony rather than its *admissibility*. Such arguments are not relevant to the analysis pursuant to Federal Rule of Evidence 702 and *Daubert* of whether expert testimony should be admitted.

## II. MR. BLAESI'S EXPERIENCE AND QUALIFICATIONS MAKE HIM WELL QUALIFIED TO TESTIFY AS AN EXPERT

Mr. Blaesi has provided real estate appraisal and valuation consulting services for nearly fifty years. (*See* Mr. Blaesi's Expert Report (sometimes referred to as the "Blaesi Report"), Docket No. 2945-3, at pp. 86-87.)[2] Since 2014, Mr.

---

[1] "Mouren-Laurens Parties" refers collectively to Defendants, Counterclaimants, Cross-Claimants, Cross-Defendants, and Third-Party Plaintiffs Mouren-Laurens Oil Company, John Mouren-Laurens, Mireille Mouren-Laurens, Claudine Mouren-Laurens as Administrator of the Estate of Joseph Mouren-Laurens, and Nicole Mouren-Laurens as Administrator of the Estate of Emma Mouren-Laurens.

[2] As referenced herein, the pin cites to Mr. Blaesi's expert report correspond to the blue ECF page numbers.

---

**REV 973'S OPPOSITION TO MOUREN-LAURENS PARTIES' MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF RANDALL BLAESI**

1

Blaesi has held the position of Senior Appraiser and Litigation Consultant at Curtis – Rosenthal, Inc.—a well-recognized commercial real estate appraisal and consulting firm. (*See id.* at p. 86). Mr. Blaesi holds several related professional designations, including certifications from the States of California and Nevada, and other accreditations from the American Society of Appraisers, the Appraisal Institute, and the Royal Institution of Chartered Surveyors. (*Id.*) Most importantly, Mr. Blaesi has been accepted as an expert witness before numerous courts and other venues including the federal bankruptcy court for the Northern and Southern Districts of California, the California Superior Courts for Los Angeles, San Diego, Sacramento, Stanislaus, San Joaquin, Placer, and Nevada Counties, the U.S. Tax Court in San Francisco, and County Assessment Boards of Appeal for Los Angeles, Sacramento, and San Diego Counties. (*See id.* at pp. 5, 87).

### III. MR. BLAESI'S PROFFERED REPORT AND TESTIMONY ARE FACTUALLY GROUNDED AND ADHERE TO THE STANDARDS GOVERNING REAL ESTATE APPRAISALS AND VALUATIONS

Without citing any legal authority, the Mouren-Laurens Parties claim in section II of their Memorandum of Points and Authorities (the "P&As") that Mr. Blaesi's expert report and deposition testimony[3] regarding the amount of lost rent are purportedly based on "pure conjecture," and should be excluded. (P&As, pp. 1-4). This claim is unavailing. Mr. Blaesi's report and testimony, including his proffered opinion on lost rent, are factually based and adhere to applicable standards for expert opinions on real estate appraisals and related valuations.

As detailed extensively in the Blaesi Report, in order to provide opinions on the lost rents/revenues for the underlying property, Mr. Blaesi reviewed several

---

[3] While the P&As contain several vague references that Mr. Blaesi's "deposition testimony" is not supported, the Mouren-Laurens Parties do not provide any examples or exhibit materials for Rev 973 (or the Court) to review on this issue. Thus, the Mouren-Laurens Parties' arguments tied to Mr. Blaesi's "deposition testimony" are conclusory and must fail.

---
**REV 973'S OPPOSITION TO MOUREN-LAURENS PARTIES' MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF RANDALL BLAESI**
**2**

elements (*e.g.*, lease expense basis, market conditions, physical characteristics, etc.) from five comparable properties to calculate the fair market rent per square foot for the year 1998 *and* eight comparable properties to calculate the fair market rent per square foot for the year 2020. (*See id.* at pp. 36-45.) Mr. Blaesi then utilized an income approach analysis or the "income capitalization approach" (with a straight-line 4% annual escalation from 1998 to 2020) to determine the subject property's income potential and arrive at the fair market value for renting the property from 1998-2020. (*Id.* at pp. 46-49.) Mr. Blaesi's expert report then sets forth the monthly and annual gross income for rent for each year from 1998-2020, and provides a final estimate of the fair market rental value for the time period at issue.[4] (*Id.* at pp. 49-51.) Moreover, contrary to the Mouren-Laurens Parties' assertion that the Blaesi Report does not provide information on the rent Rev received, the Blaesi Report provides the gross rent Rev 973 received from specific tenants. (*Id.* at p. 50.)

Importantly, this type of methodology utilized by Mr. Blaesi has been held reliable under *Daubert*. (*See, e.g.*, *Kinder Morgan Energy Partners, LP*, 159 F.Supp.3d 1182, 1194 (S.D. Cal. 2016) (denying a motion to exclude the opinions of a real estate appraiser who used the ground rent capitalization method to calculate the plaintiff's real estate damages tied to contamination); *First Nat. Mortg. Co. v. Fed. Realty Invest. Trust*, 633 F.Supp.2d 985, 999 (N.D. Cal. 2009) (The Court's conclusions of law cite expert testimony and evidence of capitalization rates from other properties, imputed rents for the time period at issue, and a 3% annual escalation); *see also* Cal. Evidence Code §819 ("When relevant to the determination of the value of property, a witness may take into account as a

---

[4] The Mouren-Laurens Parties' repeated assertion that Mr. Blaesi's opinion that the property would have rented for approximately $240,000 in 1998 "is plucked out of thin air" is just one specific example of the Mouren-Laurens Parties' multiple red herrings and misleading statements as Mr. Blaesi's expert report lays out in painstaking detail all of his steps and calculations to arrive at this amount pursuant to the methodology outlined above. (*Id.* at pp. 37-40.)

basis for his opinion the capitalized value of the reasonable net rental value attributable to the land and existing improvements thereon.").

Moreover, Mr. Blaesi's expert report was prepared in accordance with the standards and reporting requirements of the Uniform Standards of Professional Appraisal Practice ("USPAP"). (*See* Blaesi Report at pp. 12, 78). Courts have held expert testimony prepared in accordance with USPAP admissible under *Daubert*. *See, E.g*, *Andrews v. Plains All Am. Pipeline, LP*, No. CV 15-4113 PSG, 2020 WL 3105425, at *6 (C.D. Cal. Jan. 16, 2020) (denying a motion to exclude testimony and concluding that an expert's appraisal report pursuant to USPAP standards was helpful to the trier of fact in part because it determined a reasonable value of the loss of reasonable use for an amenity while it was contaminated).

### IV.  THE MOUREN-LAURENS PARTIES DO NOT CHALLENGE BLAESI'S OPINION ON THE PROPERTY'S DIMINUTION IN VALUE AND BLAESI DOES NOT PROVIDE TESTIMONY ON REMEDIATION COSTS

In pages 52-75 of the Blaesi Report, Mr. Blaesi determined the diminution in value of the subject property as the result of hydrocarbon contamination. For this opinion, Mr. Blaesi calculated both the fair market value of the property with contamination and the fair market value of the property without contamination (*i.e.*, assuming that the contamination did not exist and regardless of any estimated remediation costs). (*See, E.g.,* Blaesi Report, pp. 50-52).

In section III of their P&As, the Mouren-Laurens Parties mischaracterize this opinion of Mr. Blaesi regarding the fair market value of the property, contending that the Blaesi Report is flawed because Mr. Blaesi rather than Mr. Brett Bowyer is purportedly providing an opinion regarding the cost of remediating the contaminated subject property. The Mouren-Lauren Parties' contention is fallacious because Mr. Blaesi is not providing an opinion on the underlying costs to

1  remediate the property, which is the subject of Mr. Bowyer's proffered testimony.[5]
2  Mr. Blaesi is simply opining that the fair market value of the property does not
3  exceed the estimated remediation costs, and thus it is not feasible or practical to
4  remediate the property. (*See* Blaesi Report at p. 51).

5        Mr. Blaesi's diminution in value opinions are completely independent and
6  stand alone from Mr. Bowyer's opinions regarding anticipated costs to remediate
7  the property. Mr. Blaesi calculated *both* the fair market value of the property with
8  contamination *and* the fair market value of the property without contamination (*i.e.*,
9  assuming that the contamination did not exist and regardless of any estimated
10 remediation costs). (*See, E.g.,* Blaesi Report, pp. 50-52.) For this analysis, Mr.
11 Blaesi reviewed and relied on several diminution and environmental contamination
12 case studies, published literature, and other sources such as broker interviews on
13 this subject. (*Id.* pp. 53-75.) Mr. Blaesi concluded that the fair market value of the
14 property is $8,400,000 without consideration of the environmental contamination,
15 and $6,670,000 with consideration of the environmental contamination. (*Id.* at pp.
16 75-76) Regarding Mr. Bowyer's opinions regarding anticipated costs to remediate
17 the property, Mr. Blaesi simply states that in light of the estimated remediation
18 costs, it is not feasible or practical to remediate the property in light of the fair
19 market value of the property. (*Id.* at p. 51).

20       In any event, since the Mouren-Laurens Parties do not challenge Mr. Blaesi's
21 specific opinions regarding the diminution in value of the property and only Mr.
22 Blaesi's purported adoption of Mr. Bowyer's opinion regarding remediation costs,
23 Mr. Blaesi's proffered testimony on the property's diminution in value should be
24 admitted.[6]

---

[5] Rev 973 is concurrently filing an opposition to the Mouren-Laurens Parties' motion *in limine* to exclude portions of Mr. Bowyer's expert report and Rev 973 respectfully directs the Court to that opposition brief regarding Mr. Bowyer's opinions.

[6] The case law cited above in Section III regarding the methods to determine real estate damages also applies here. *See E.g. Andrews*, *supra*, 2020 WL 3105425, at *7-8 (concluding expert's

---

**REV 973'S OPPOSITION TO MOUREN-LAURENS PARTIES' MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF RANDALL BLAESI**

5

Moreover, even assuming, *arguendo*, that Mr. Blaesi somehow "relies" on Mr. Bowyer's estimated remediation costs, such reliance would be proper and the Blaesi Report and Mr. Blaesi's proffered testimony would still be admissible. While experts are not supposed to rely on another expert's opinion where that second opinion has been deemed unreliable and inadmissible, (*See Sims v. Kia Motors*, 839 F.3d 393, 404 (5th Cir. 2016); and *In re Cathode Ray Tube Antitrust Litig.*, No. C-07-05944 JST, 2017 WL 10434367, at *2 (N.D. Cal., 2017), there is no suggestion that Mr. Bowyer's opinion regarding estimated response costs is unreliable and inadmissible. The Mouren-Laurens Parties' separate motion in limine regarding Mr. Bowyer's opinion is limited to how response costs should be allocated under CERCLA, and not upon any purported unreliability in that opinion.

Finally, the cases cited by the Mouren-Laurens Parties in section III of their P&As are inapposite and readily distinguishable. In all four cases cited, In *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 544-546 (C.D. Cal. 2012); *In re TMI Litig.*, 193 F.3d 613, 714-715 (3d Cir. 1999); *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 629-630 (W.D. Wash. 2011); and *In re Imperial Credit Indus., Inc. Secs. Litig.*, 252 F. Supp. 2d 1005, 1012 n.5 (C.D. Cal. 2003), the expert largely, if not entirely, relied on a second expert's opinions as the basis for forming his own opinion. For example, in *Cholakyan*, the court observed that it appeared the expert appeared to have "cut and paste large parts [of the other expert's] declaration, altered a few key sentences and phrases, and simply adopted [the other expert's] conclusions as his own." (*Id.* at 546.) Similarly, in *In re TMI Litig* the exposure assessment expert relied on the opinions of other dose experts

---

appraisal report was admissible where the expert relied on case studies, published literature, media reports, interviews, and other informal sources). Notably, Mr. Blaesi's expert report cites several publications and case studies written by Dr. Randall Bell who is the exact same expert in *Andrews* where the court held Dr. Bell's appraisal testimony was admissible under *Daubert*. (*See* the Blaesi Report at p. 53-63; and *Andrews* at *3, 7-8.)

---

**REV 973'S OPPOSITION TO MOUREN-LAURENS PARTIES' MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF RANDALL BLAESI**

6

and he assumed the correctness of each expert's proposition even though by not assessing the validity of the other expert's assumptions, the expert ignored and violated his own stated principles to conduct risk assessments. (*Id.* at 714-715).

In great contrast with those foregoing cases, Mr. Blaesi did not rely on Mr. Bowyer's opinions to formulate his own opinions. Mr. Blaesi's and Mr. Bowyer's opinions relate to different issues and subject matters and are independent of each other.

Additionally, *Fosmire* and *In re Imperial Credit Indus.* also preclude an expert from testifying to an opinion based on another expert's opinion because that other expert would not be testifying at trial. *Fosmire* emphasized that the expert based his entire opinion solely on data provided by another expert and that the second expert would not be available for cross-examination at trial (Id. at 629-630). *In re Imperial Credit Indus.* is the same (Id. at 1012 n.5). Here, by contrast, Mr. Bowyer will be available at trial and the Mouren-Laurens Parties will be able to cross-examine him regarding his opinion on remediation cost estimates.

## V. MR. BLAESI'S PROFFERED REPORT AND TESTIMONY SHOULD BE ADMITTED

Expert witnesses may testify based on their knowledge, skill, experience, training, or education if: (a) the expert's scientific, technical or otherwise specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case. Federal Rule of Evidence 702.

To evaluate the admissibility of an expert opinion, the Court makes the preliminary determination as to whether a proposed expert witness is qualified to testify. (Daubert, 509 U.S. at 591). In addition to reviewing an expert's

qualifications, the Court acts as a gatekeeper to ensure that the expert testimony is reliable and relevant. (Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999). The Court has broad discretion in deciding whether to admit expert testimony pursuant to FRE Rule 702. (General Elec. Co. v. Joiner, 522 U.S. 136, 141-42 (1997). The proponent of the expert opinion need only establish admissibility by a "preponderance of proof." (Daubert, 509 U.S. at 592.) Once the threshold standard is met, the witness must be allowed to testify because the degree of expertise or knowledge goes to the weight of the testimony, not the admissibility. (Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010).) Rejection of expert testimony is the exception, not the general rule. (See, e.g., Puga v. RCX Solutions, Inc., 922 F.3d 285, 294 (5th Cir. 2019).)

Expert opinion testimony regarding the valuation of real property is admissible, so long as the expert is "qualified to appraise the value of the subject property" and the expert has "a factual basis for forming an opinion." *U.S. v. 33.5 Acres of Land, More or Less, Okanogan Cty., State of Wash.*, 789 F.2d 1396, 1400-1401 (9th Cir. 1986).

Mr. Blaesi's proffered expert report and his testimony amply fulfill the foregoing standards and should be admitted. First, the Blaesi Report and his testimony are relevant and will assist the trier of fact to understand the evidence and to determine facts at issue. The questions addressed by Mr. Blaesi, including, *inter alia*, the valuation of the subject property, the diminution in that valuation due to the property's contamination, and the amount of lost rent, are central to this case. Second, as discussed in detail in sections III and IV above, the report and proffered testimony are reliable. The report and proffered testimony are grounded in clear and reliable facts (*See, e.g*, pg. 2, ln. 23-pg. 3, ln. 14; and pg. 5, lns. 5-19 above), and Mr. Blaesi has adhered to reliable and well-recognized standards and methodologies. The Blaesi Report was prepared in accordance with the standards

and reporting requirements of USPAP, and the type of methodology utilized by Mr. Blaesi has been held reliable under *Daubert*. (*See, e.g*, pg. 3, ln. 15-pg. 4, ln. 11 above). Third, as described in detail in section II above as well as in pages 86-90 of the Blaesi Report, Mr. Blaesi is very well qualified to render his opinions in the report and proffered testimony.

The Mouren-Laurens Parties nevertheless assert without analysis in section IV of their P&As that Mr. Blaesi's proffered report and testimony are unreliable and should be excluded under *Daubert*. In support of that assertion, the Mouren-Laurens Parties cite several cases for the general proposition that expert opinion testimony can be excluded when a court finds that there is too great an analytical gap between data and the opinion proffered. (P&As, p. 6, ln.11-pg. 7, ln. 17). Those cases do not assist the Mouren-Laurens Parties.

The Mouren-Laurens Parties only cite a single case, *Gumwood HP Shopping Partners L.P. v. Simon Property Grp., Inc.*, 221 F. Supp. 3d 1033, 1039 (N.D. Ind. 2016), that dealt with real estate or rent damages, and *Gumwood* is readily distinguishable. In *Gumwood*, a shopping center owner brought an action against the owner of a competing mall for restraint of trade, monopolization, and attempted monopolization. The court excluded potential expert testimony regarding the loss of one or more key retailers having spillover or "snowball" effects on other actual or potential tenants. The court noted that the expert "did not identify any particular injury whose effect he was attempting to measure," the expert "did not conduct any analysis in an attempt to quantify the snowball effect," and the expert merely made general reference to the snowball effect, and asserted that no matter what findings the jury made regarding the defendant's liability, the snowball effect would account for damages without the expert quantifying that effect or connecting it to damages. Gumwood at 1038-1039. Here, in great contrast, as discussed in detail in sections III and IV above, the report and proffered testimony are grounded in clear and

reliable facts, and Mr. Blaesi has adhered to reliable and well-recognized standards and methodologies.

Finally, the Mouren-Laurens Parties' arguments largely address the *weight* of Mr. Blaesi's expert report and proffered testimony rather than its *admissibility*. Such arguments are not relevant to Rule 702 analysis. *See, E.g, Primiano v. Cook*, *supra*, at 565; *United States v. Prime*, 431 F.3d 1147, 1153 (9th Cir. 2005); and *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230–31 (9th Cir. 1998) ("In arriving at a conclusion, the factfinder may be confronted with opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony. But their presence should not preclude the admission of the expert's testimony—they go to the weight, not the admissibility"). The Mouren-Laurens Parties would still have an opportunity to challenge the weight of Mr. Blaesi's opinions at trial by, *inter alia*, conducting cross-examination and presenting contrary evidence.

## VI. CONCLUSION

For all of the foregoing reasons, the Mouren-Laurens Parties' Motion should be denied in its entirety.

DATED: December 3, 2021        Respectfully submitted,

LAW OFFICES OF BETH S. DORRIS

By:  /S/Beth S. Dorris
Attorneys for Plaintiff and Counter-Defendant Rev 973, LLC and Third Party Defendants Revere Financial Corporation and Jerrold A. Fine

---

**REV 973'S OPPOSITION TO MOUREN-LAURENS PARTIES' MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF RANDALL BLAESI**

10