1  Timothy C. Cronin (SBN: 181989)
   tcronin@crolaw.com
2  Alan R. Johnston   (SBN: 208991)
   ajohnston@crolaw.com
3  Dennis J. Byrne    (SBN: 172618)
   dbyrne@crolaw.com
4  THE CRONIN LAW GROUP
5  390 Bridge Parkway, Suite 220
   Redwood City, CA 94065
6  Telephone:   (415) 951-0166
   Facsimile:   (415) 951-0167
7
8  Attorneys for Defendants, Counterclaimants, Cross-Claimants, Cross-Defendants and Third-Party Plaintiffs Nicole Mouren-Laurens as Administrator of the Estate of Emma Mouren-Laurens and Claudine Mouren-Laurens as Administrator of the Estate of Joseph Mouren-Laurens
9
10 Jordan S. Stanzler  (SBN: 54620)
11 jstanzler@stanzlerlawgroup.com
   THE STANZLER LAW GROUP
12 390 Bridge Parkway, Suite 220
   Redwood City, CA 94065
13 Telephone:  (650) 739-0200
   Facsimile:   (650) 739-0916
14
15 Attorneys for Defendants, Counterclaimants, Cross-Claimants, Cross-Defendants and Third-Party Plaintiffs Mouren-Laurens Oil Company, Inc., John Mouren-Laurens and Mireille Mouren-Laurens
16

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**(Western Division)**

| | |
|---|---|
| REV 973, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN MOUREN-LAURENS, an individual, et al.,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS, CROSS-CLAIMS, AND THIRD-PARTY CLAIMS. | Case No.: 2:98-cv-10690-DSF-EX<br><br>**DEFENDANTS AND COUNTER-CLAIMANTS MOUREN-LAURENS PARTIES' REPLY TO REV 973'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE TESTIMONY OF RANDALL BLAESI**<br><br>Assigned for all purposes to:<br>  Hon. Dale S. Fischer<br><br>Date: Under Submission December 27, 2021<br>Time: Established by the Court<br>Ctrm: 7D |

Final Pre-trial Conference Date:
April 4, 2022

Trial Date: May 31, 2021

The Opposition brief filed by Rev 973 (Docket No. 2959) does not address, refute, or explain the data gaps identified in the Mouren-Laurens Parties' Motion in Limine (Docket No. 2945).

# I. THERE IS NO OPINION AND NO DATA THAT THE CONTAMINATION OF GROUNDWATER CAUSED ANY LOSS OF RENT, AT ALL.

The first point of the Mouren-Laurens Parties' Motion in Limine is that Blaesi's report does not contain any data to show what each tenant paid in each year from 1999 to 2020. Therefore, there is no logical basis (no data) to support Blaesi's opinion that Rev lost *any* rent due to contamination. Indeed, the Blaesi Report does not even state or opine that the contamination (in this case, contamination of soil and groundwater) rendered the property unrentable to any tenant.

As a matter of pure logic, any opinion that rent was lost (not received) due to contamination of the property must contain these basic facts:

1) There was contamination of such a nature that it that prevented Rev 973 from renting a specific rental unit;
2) There was one or more specific rental units in each year that could not be rented due to the contamination;
3) There was a specific amount of rental income in each year, for each contaminated unit, that could not be rented.

Because there is no data and no opinion as to these basic facts, Blaesi's opinion is based on pure conjecture, which should be excluded from evidence for that reason. Rev's Opposition does not and cannot supply the missing data. Rev devotes but a single sentence addressed to this point, saying that the "Blaesi Report provides the

1

Defendants' and Counter-Claimants' Motion to Exclude Testimony of Blaesi

gross rent Rev received from specific tenants", citing to page 50 of the Blaesi Report. See Document 2959 at page 3, lines 11-14. That is true, but adds nothing and misses the point of the motion in limine. The fact that Rev received rent from some tenants does not explain what rent was NOT received due to contamination. Indeed, the very fact that Rev received this rental income cuts the other way – showing that Rev 973 was able to rent specific units despite the contamination because the contamination in question (groundwater contamination) had no effect on the ability to rent any particular unit.

Take the year 1998 as an example. The Blaesi Report does NOT state that the contamination of groundwater made it impossible to rent any part of the premises in 1998. The Report does NOT state the amount of rent that Rev 973 did not receive in 1998 due to contamination. The Report does NOT state the amount of rent that was actually received in the year 1998. The Report does NOT even state who the tenants were in that year and what those tenants paid in rent.

Rather, the Report ASSUMES on page 6 that the total rent received in 1998 was $240,214. See the table on page 6 which states that the table ASSUMES that the total rent in 1998 was $240,214. But there are no facts to support this assumption – no facts to show the actual rent paid in 1998; the name of any tenant who paid rent in 1998; how many spaces were actually rented; and how many spaces were not rented due to contamination. These gaps in data are then repeated for each year from 1998 to 2020. In each year from 1999-2020, Blaesi assumes that the rent for 1998 was $240,214. He then adds an assumed percentage (4.0395%) of rental increase in each year to the assumed base number of $240,214.

There is no factual basis for these assumptions. Indeed, there is no statement or opinion in the Blaesi Report that any specific space was not rented due to contamination. Blaesi does not even recognize what the contamination was, much less that it was contamination of groundwater. He merely makes one or two references to

2

Defendants' and Counter-Claimants' Motion to Exclude Testimony of Blaesi

"hydrocarbon contamination", without even explaining what he means by that.

Furthermore, there is no statement or opinion that the contamination in question (contamination in groundwater which, by definition, is located below the surface of the land) caused any part of the property to be unrentable.

In conclusion, there is no factual basis to support the ASSUMPTION that Rev 973 lost rent due to contamination

## II. BLAESI'S OPINION THAT IT IS NOT FEASIBLE TO REMEDIATE THE PROPERTY AT A COST OF $30 MILLION IS BEYOND THE SCOPE OF HIS EXPERTISE AND IS IRRELEVANT.

Mr. Blaesi is not an expert on the cost of remediation and his opinion as to the feasibility of remediation is irrelevant, in any event. Blaesi opines that "it is not feasible to remediate the property at a cost of approximately $30 million". Blaesi Report at p. 31. He relies upon the Report of Brett Bowyer for the number of $30 million.

The feasibility of remediation is a subject that will be determined by the Regional Water Quality Control Board. Mr. Blaesi's opinion is totally irrelevant. The remediation will be conducted, regardless of its so-called "feasibility" and regardless of Mr. Blaesi's opinion as to its feasibility.

Furthermore, this opinion will also be irrelevant if it is determined that Bowyer is in error and that the cost of remediation is less than $30 million. Thus, in any event, Blaesi's testimony should not be admitted unless and until it is first determined (or admitted into evidence) that the cost of remediation will be $30 million.

/ / /
/ / /
/ / /
/ / /
/ / /

3

# CONCLUSION

The expert report of Mr. Blaesi, and the opinions based upon that report, should be excluded from evidence.

Dated: December 10, 2021          Respectfully submitted,

THE CRONIN LAW GROUP

BY: */s Timothy C. Cronin*
    TIMOTHY C. CRONIN
    Attorneys for Defendants and Counter-Claimants, Nicole Mouren-Laurens as Administrator of the Estate of Emma Mouren-Laurens, Claudine Mouren-Laurens as Administrator of the Estate of Joseph Mouren-Laurens

Dated: December 10, 2021          THE STANZLER LAW GROUP

BY: */s/ Jordan S. Stanzler*
    JORDAN S. STANZLER
    Attorneys for Defendants and Counter-Claimants Mouren-Laurens Oil Company, Inc., John Mouren-Laurens and Mireille Mouren-Laurens

*Pursuant to United States District Court, Central District of California, Local Rule 5-4.3.4(2)(i), the filer attests that all signatories listed on this document, and on whose behalf the filer is submitting this document, concur in the filing's content and have authorized the filing.*