Beth S Dorris (SBN 115798)
beth.dorris@aol.com
Gerald L. Greengard (SBN 125741)
ggreengard@greengardlaw.com
LAW OFFICES OF BETH S. DORRIS
3226 Mandeville Canyon Road
Los Angeles, CA 90049-1016
Telephone:  (310) 476-0476
Facsimile:  (877) 433-0415

Attorneys for Plaintiff and Counter-defendant Rev 973, LLC, and Third Party Defendants Revere Financial Corporation and Jerrold A. Fine

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## (Western Division)

| | |
|---|---|
| REV 973, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> JOHN MOUREN-LAURENS, an individual, et al., <br><br> Defendants. <br><br> AND RELATED COUNTER-CLAIMS, CROSS-CLAIMS, AND THIRD-PARTY CLAIMS. | Case No.: 2:98-cv-10690-DSF-EX <br><br> **STATUS CONFERENCE REPORT BY PLAINTIFF AND THIRD PARTY DEFENDANTS** <br><br> Trial Date:  Unknown <br><br> Ctrm:          7D <br><br> Judge:        Hon. Dale S. Fischer |

Plaintiff Rev 973, LLC ("Plaintiff"), together with Jerrold A. Fine and Revere Financial Corporation as Third Party Defendants to the Original Mouren-Laurens Defendants[1], provide this status report for the January 11, 2023 Status Conference.

---

[1] Original Mouren-Laurens Defendants are: Mouren-Laurens Oil Company, Inc., John Mouren-Laurens, and Mireille Mouren-Laurens.

**STATUS CONFERENCE REPORT BY PLAINTIFF AND THIRD PARTY DEFENDANTS**

On December 28, 2022, Defendants[2] submitted a unilateral Status Report on Settlement (Dkt. 3034, "Defendants Report").

**1.   Disappointingly, All Three Cleanup Assurances To Plaintiff In The Term Sheet Have Been Withdrawn.**

Defendants' Status Report acknowledges that Mouren-Laurens Defendants will not provide the cost cap insurance required under the June 2022 settlement term sheet ("Term Sheet"). (Defendants Report at p. 6:21, 7:1) This means Term Sheet is not a realistic candidate for a good faith determination. Trial and pretrial dates vacated in reliance on the Term Sheet now need to be re-set.

Unfortunately, cost cap insurance was not the only cleanup assurance set forth in the Term Sheet withdrawn on a return to Judge Otero. Mouren-Laurens Defendants have also repudiated all other cleanup assurances assigned to them, their insurers ("MLD Insurers") or their contractor ("MLD Contractor") expressly stated in the Term Sheet, as follows:

1. The MLD Insurers did not agree to fund cleanup [above Leach Defendants' upfront set dollar contribution] to "completion."
2. The MLD Contractor did not agree to comply with the agency cleanup orders.
3. Mouren-Laurens Defendants will not provide reasonable cost cap insurance from and approved by Plaintiff upfront.
4. Mouren-Laurens Defendants will not provide basic assurances that are part of the normal course of obtaining cost cap insurance, necessary not only for final issuance but also for reasonable, enforceable cleanup settlement, such as:
   - A cleanup schedule for the work plan, first submitted and approved by the oversight agency, with a reasonable 10 year term and start date, milestone and

---

[2] Defendants are comprised of: the Original Mouren-Laurens Defendants; Nicole Mouren-Laurens as Administrator of the Estate of Emma Mouren-Laurens and Claudine Mouren-Laurens as Administrator of the Estate of Joseph Mouren-Laurens ("MLD Estates" and, collectively with the Original Mouren-Laurens Defendants, Mouren-Laurens Defendants); and Leach Oil Company, Inc., Leach Property Management, Inc., Roy Leach, an individual (deceased) and Patricia Leach, an individual ("Leach Defendants").

completion date.

- A contractor that meets the insurer's specific quality standards, with a proven track record of schedule, budget, and agency order compliance; and
- The insurer's (not Defendants') vetted "cost cap", required to be set aside in a cleanup fund, generally *double* the insurer's independently vetted midrange estimate of future costs, after considering *all* parties' experts prior estimates (provided under the insureds' representations and warranties).

Without all these cleanup insurances, the Term Sheet becomes unfunded, unenforceable, and unimaginable. Further, none of the remaining parts of the Term Sheet work without the cleanup assurances. As an example of just how tied the Term Sheet is to the original cleanup assurances, the Term Sheet included a prohibition of "pursuit" of PRPs for cleanup funding gaps that develop. Such a provision only works with cost cap insurance and no-caveat "completion" funding. There can be no bar of PRP pursuit in any new settlement without Plaintiff-approved cost cap insurance. In addition, because PRP claims are likely, the settlement will need to conform to current Ninth Circuit standards for a CERCLA contribution bar. Plaintiff's understanding of those standards is that the settlement must, first and foremost, reimburse all plaintiff's past response costs especially since future cleanup costs can be too "speculative."

Defendants' Report claims Mouren-Laurens Defendants offered Plaintiff, in confidential mediations,[3] "additional" cleanup funding for completion. Such "additional" completion funding is not possible. The Term Sheet *already* required full funding for completion, whatever the cost, was already required from MLD Insurers.

Unfortunately, of *adding* consideration, counsel for Mouren Laurens Defendants

---

[3] Defendants Report seeks to divulge confidential settlement and mediation communications. In so doing, Defendants waive any privilege but only for Defendants. It is unfortunate that Defendants' repeated attempts to disclose confidential settlement communications necessarily weakens the settlement and mediation process. Similarly, a defendant's representing that they would abide by a "term sheet" as ready for a good faith determination, only to insist on different terms for any final settlement, imp peril of sacrificing trust in the settlement process. Settlement is hard enough when an action is in its twenty-fifth (25th) year, without adding to the difficulties.

2
**STATUS CONFERENCE REPORT BY PLAINTIFF AND THIRD PARTY DEFENDANTS**

proposed to remove yet other cleanup consideration. Instead of full funding to completion by the MLD Insurers, they wanted to proceed *without* the MLD Insurers agreeing to the funding, and *without* a set cleanup funding amount. In other words, they wanted cleanup funding obligations assigned to the very Mouren-Laurens Defendants who claim not to have those funds, and who claim their insurers will not fund cleanup for them. Further, they wanted to transfer the risk of underfunding future cleanup to Plaintiff, even while taking away cost cap insurance.

Moreover, the future cleanup funding cap Defendants now require for settlement, without cost cap insurance, is:

- $4.5 million *below* what Defendants' Report, p. 6, admits would better assure completion;
- About $4 million *less* of future cleanup funding than Mouren-Laurens Defendants' in the Court-rejected 2016 settlement [about $5 million less in current value].
- When combined with Leach Defendants' upfront payment:
    - More than $30 million *below* than Plaintiff's expert's *low range* estimate;
    - About $4 million *below* the estimate in Mouren-Laurens Defendants' own expert report; and
    - $25-50 million *below* what reasonable cost cap policies generally would set for the cap, based on Plaintiff's discussions with its broker consultant.

In Plaintiff's view, Mouren-Laurens Defendants' changes are not feasible and create a barrier to global settlement. The parties are farther apart now than they have ever been.

Plaintiff has had discussions with Leach Defendants that may lead to a good faith motion on a separate settlement. For that matter, Defendants have never needed Plaintiff to sign an agreement among themselves that assured full cleanup of *both* Sites, not just Plaintiff's security property. Either or both such settlements will at a minimum keep trial length and issue to the bare minimum, and could possibly eliminate the need for more than a few-day fair share hearing. .

2. **Proposed Trial and Pretrial Dates**.

Unfortunately, this case is already in its twenty-fifth year. The passage of time resulted in the passing of three Defendants who otherwise would have been important witnesses at trial. A number of remaining key witnesses are now in advanced age, some beyond normal life expectancy. Mr. Fine, for example, started this case is in late fifties, but is now well into his eighties. This ***not*** an urgent problem, but rather a request to avoid further delays for settlement without a motion for good faith determination already before the Court.

Plaintiff has proposed trial and pretrial dates to allow some room for any motion for good faith determination for partial settlements. We propose that all any and motions for good faith determination be set to on a newly set Final Pretrial Conference Date. This way, if they are granted, the remaining parties will have time to adjust and can propose striking specific parts of the [revised] proposed joint pretrial conference order (12/30/21 Dkt. 2973#1). Plaintiff has no objection to adding 30-60 days to the proposed schedule below. Setting a Final Pretrial Conference Date also allows the parties to update the exhibit list to include their respective past response costs incurred over the past year and additional public record act responses. Further, it allows the parties to meet and confer further on jury instructions, as to which there are currently vast differences. The parties also could meet and confer on the only remaining third party claims brought by the Original Mouren-Laurens Defendants. (MLD Estates having agreed, through deliberate non-opposition and non-continuation, to striking their third party claims from the proposed joint pretrial order.)

Accordingly, Plaintiff proposes the following trial and pretrial conference dates:
Final Pretrial Conference Date: March 1, 2023, or as soon thereafter as the Court determines
Trial Date: May 1, 2023, or as soon thereafter as the Court determines
All other pretrial dates would be as set forth in the Local Rule 16, counting back from the new trial or final pretrial conference date, as applicable.

4
**STATUS CONFERENCE REPORT BY PLAINTIFF AND THIRD PARTY DEFENDANTS**

Like Charlie Brown, Plaintiff has spent the last twenty-four (24) years trying to kick that settlement football through the goalposts. Plaintiff appreciates very much that this Court gave the parties one more chance before trial. The parties now must turn to judgments so that the "polluters [and insurers] pay."

LAW OFFICES OF BETH S. DORRIS

By: /s/ Beth S. Dorris
BETH S. DORRIS
Attorneys for Rev 973, LLC, R Attorney for Plaintiff Rev 973, LLC, and for Third Party Defendants Jerrold A. Fine and Revere Financial Corporation, as named third party defendants by Mouren-Laurens Oil Company, John Mouren-Laurens and Mireille Mouren-Laurens

Pursuant to United States District Court, Central District of California, Local Rule 5-4.3.4(2)(i), the filer attests that all signatories listed on this document, and on whose behalf the filer is submitting this document, concur in the filing's content and have authorized the filing.